279 So.2d 585

**Floyd HARTLEY**

v.

**STATE.**

**6 Div. 258.**

Court of Criminal Appeals of Alabama.

June 12, 1973.

William J. Baxley, Atty. Gen., and Sarah V. Maddox, Asst. Atty. Gen., for the State.

ALMON, Judge.

This appeal is from the denial of a petition for writ of error coram nobis. Whether the relief sought would have been more properly within the writ of habeas corpus is unnecessary to decide. Horsley v. State, 42 Ala.App. 567, 172 So.2d 56.

The facts developed at the hearing are that on October 26, 1967, the petitioner was convicted of sodomy (Circuit Court #10067–A) and sentenced to six years imprisonment. Still pending against the petitioner, after the sodomy conviction, were the charges of assault with intent to ravish (# 10113–A) and two charges of forgery (# 9650–A and # 9651–A). On November 17, 1967, petitioner was arraigned for the charge of assault with intent to ravish (# 10113–A), where he entered the same pleas he had entered in the sodomy case, not guilty and not guilty by reason of insanity. On December 7, 1967, the State petitioned the court to have Hartley examined and observed at Bryce Hospital to ascertain whether he was a criminal sexual psychopathic person within the meaning of Tit. 15, § 434(a), Code of Alabama 1940, 1971 Cum.Supp. On December 11, 1967, the court granted the State's petition and ordered Hartley sent to Bryce Hospital for a mental evaluation. For some unexplained reason, while petitioner was in Bryce Hospital his commitment papers in

C. Delaine Mountain, Tuscaloosa, for appellant.

the sodomy conviction had been sent to the Board of Corrections. Since the petitioner was at Bryce Hospital and had not yet been imprisoned in the State penitentiary, the Board of Corrections on January 15, 1968, returned the commitment papers to the Circuit Court Clerk's Office in Tuscaloosa County. After the return of the commitment papers to the clerk's office, they were inadvertently misplaced and not discovered until December 5, 1969. On January 18, 1968, the mental evaluation of the petitioner revealed he was not a criminal sexual psychopathic person; thus, he was returned on that date to stand trial on the remaining charges against him.

On February 9, 1968, after his return from Bryce Hospital, petitioner changed his pleas of not guilty to pleas of guilty and was sentenced to two years for assault with intent to ravish (# 10113–A), and two years and two days on two forgery charges (# 9650–A and # 9651–A). These sentences were to run concurrently. The petitioner was sent to the penitentiary in February, 1968; but was released on July 23, 1969, and told that he had no additional time. On this point petitioner testified as follows:

"THE WITNESS: That's right, 23rd day of July of '69, I got out of the penitentiary.

"Q. All right.

"A. They give me my go free papers and the go free money—they give you the go free money in there; they give me a suit of clothes, and fifteen dollars, I think it was, of go free money. And I asked them again at the desk out there before they give me my go free money, did they have any more charges against me—the penitentiary—and they said, 'We don't have any more charges against you at all.' They said, 'You are free to go —we don't want you any more, unless you get any more time while you are out.' They said, 'You are free to go; you don't have any more time to serve.' That was all they said until this case

come up, and until this robbery case come up against me. . . ."

On November 17, 1969, he was arrested for robbery (# 896–B) and possession of a pistol by a felon. At this time it was discovered that the commitment papers in the sodomy conviction (#10067–A) had not been returned to the Board of Corrections. On December 31, 1969, the trial judge made the following notation on the docket sheet of the sodomy conviction:

"It appearing to the Court that the Defendant served sentences under Cases 9650–A, 9651–A and 10113–A in the State Penitentiary and was inadvertently released on 23 July 1969 without his serving time on this case. It is ordered that the sentence on this case (sodomy) date from 23 July 1969 so that he may receive credit on the same since 23 July 1969. Henry H. Mize, Judge."

On February 10, 1970, petitioner was found guilty of robbery (# 896–B) and sentenced to fifteen years, and on March 2, 1970, the defendant entered a plea of guilty in the charge of carrying a concealed weapon (# 902–B) and was given a sentence of two years.

On July 13, 1970, petitioner filed a writ of error coram nobis with the Circuit Court of Tuscaloosa County. Although not alleged in his original coram nobis petition, it was argued by petitioner during the hearing that it was error in not allowing the time served on the assault conviction (# 10113–A) and forgery convictions (# 9650–A and # 9651–A) to be counted on the sodomy conviction (# 10067–A), i. e., that time on these three convictions should run from the date that he was first confined to the State penitentiary, February, 1968. The court denied petitioner's writ and determined that the time for the sodomy conviction (#10067–A) should have begun on July 23, 1969, with the robbery (# 896–B) and pistol sentences to follow.

■ There is no merit in appellant's contention that his sodomy sentence should

have commenced at the time of his first confinement. Although not advisable, sentences may be served out of order provided this process does not extend the time a prisoner is otherwise obligated to serve. Scott v. State, 45 Ala.App. 242, 228 So.2d 855; Swanger v. State, 276 Ala. 289, 161 So.2d 491.

Appellant relies on King v. State, 16 Ala.App. 118, 75 So. 710; Blackwell v. State, 19 Ala.App. 553, 99 So. 49. In *King* the petitioner had been convicted of grand larceny and was sentenced to thirteen months in the State Penitentiary. On the same day and by the same court, he was also convicted of petit larceny. Being unable to pay the fine and costs in the petit larceny conviction, he was sentenced to fifty-nine days hard labor for the county to commence at the expiration of the sentence received in the grand larceny conviction. Upon completion of his sentence in the grand larceny conviction, he was told his time was up and he was free to go home. Three months after his release he was arrested by the sheriff and placed in the county jail to serve the sentence he received in the petit larceny conviction. In granting petitioner's writ of habeas corpus, the Court pointed out:

". . . [I]t can be seen that the officers having custody of this convict manifested a gross carelessness and ignorance in the discharge of their duties under these statutes [now Tit. 45, § 32, Code of Alabama, 1940, recompiled 1958], and that by virtue of such carelessness or ignorance, the second judgment of conviction against the petitioner cannot be put into operation. The convict, having been discharged and given his liberty by the officers having him in custody, cannot be called upon after the expiration of the period covered by his sentence, to enter again into penal servitude, and therefore the action of the sheriff in arresting petitioner is without authority of the law and is void. . . ."

The decision in *Blackwell,* supra, simply reaffirms the holding in *King,* supra, inasmuch as the facts of each case are essentially indistinguishable. However, these cases are easily distinguishable from the case at bar in that in each of the above cited cases the time of the petitioner's second sentence had expired before the petitioned was returned to jail after having been released from the State penitentiary. In the instant case, upon discovery of the error the petitioner still had the better part of five years left to serve on his sodomy conviction. The only similarities between the instant case and the above cited cases are the fact that the petitioners were set free being told that they had no more time to serve and they in no way contributed to their untimely release.

What we have in this case is a defendant who had been sentenced to six years imprisonment, then subsequently sentenced to another two years on a different offense at a different time. Petitioner served the two years on the latter offense and was released, without fault on his part, not having served any time on the prior offense. Upon being apprehended on other charges, the mistake was discovered; and, since the time for serving the six year sentence had not expired, he was returned to prison to serve the unexpired portion. Thus, he received credit for the time he was at liberty.

It is our conclusion that the trial judge ruled correctly. The case of White v. Pearlman, 10 Cir., 42 F.2d 788, is persuasive on this point. There the Court stated:

"A prisoner has some rights. A sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installment. Certainly a prisoner should have his chance to re-establish himself and live down his past. Yet, under the strict rule contended for by the warden, a prisoner sentenced to five years might be released in a year;

picked up a year later to serve three months, and so on ad libitum, with the result that he is left without even a hope of beating his way back. It is our conclusion that where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, that his sentence continues to run while he is at liberty. As tending to support this conclusion, see Ex parte Eley, 9 Okl. Cr. 76, 130 P. 821; In re Jennings (C. C.Mo.) 118 F. 479, opinion by Circuit Judge Thayer; In re Strickler, 51 Kan. 700, 33 P. 620. As to whether a prisoner, who knows a mistake is being made and says nothing, is at fault, we do not now consider."

See also Ex parte Downey, Tex.Cr.App., 471 S.W.2d 576.

The judgment appealed from is therefore due to be

Affirmed.

All the Judges concur.